IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERICK WILFREDO SAAVEDRA ESTRADA and BOBBI JO SAAVEDRA,** <br> **Plaintiffs,** <br><br> v. <br><br> **ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, et al.,** <br> **Defendants.** | **CIVIL ACTION** <br><br><br><br><br> No. 23-2110 |

### MEMORANDUM OPINION

Plaintiffs Erick Wilfredo Saavedra Estrada and his wife, Bobbi Jo Saavedra, have been waiting for more than twenty months for the United States Citizenship and Immigration Services (USCIS) to decide on Saavedra Estrada's form I-601A application. What an I-601A application is will be explained in greater detail below. The parties agree on what the application entails and the process that USCIS must follow in coming to a decision. But Plaintiffs maintain that the process has taken far too long and have filed a Complaint alleging causes of action under Section 706 of the Administrative Procedure Act (APA) (5 U.S.C. § 706) and Section 1361 of the Mandamus Act (28 U.S.C. § 1361). The Plaintiffs ask for an order from this Court requiring that the Defendants "comply with their duties under 8 C.F.R. § 212.7(3) and issue a decision on Saavedra Estrada's application for a provisional unlawful presence waiver."

Defendants have filed a Motion pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of jurisdiction. Fed. R. C.P. 12(b)(1). If the Court decides it does have jurisdiction, the Defendants argue that Plaintiffs' Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claim for unreasonable delay.

1

Fed. R. C.P. 12(b)(6). As explained below, the Court does have jurisdiction and the Plaintiffs have stated a claim.[1]

## I. REGULATORY BACKGROUND

Prior to addressing the particulars of this matter it is useful to set out the framework in which it arises.

### A. Form I-601A, The Provisional Unlawful Presence Waiver

Under the Immigration and Nationality Act ("INA"), certain noncitizens are eligible to apply for lawful permanent resident ("LPR") status based on: (1) their relationship to a U.S. citizen or LPR; (2) their employment; or (3) their special immigrant classification, or some other immigrant category. *See generally,* 8 U.S.C. §§ 1151, 1153. As an initial step in this process, the noncitizen must either: be the beneficiary of an approved immigrant petition filed on their behalf (such as a Form I-130, Petition for Alien Relative; Form I-140, Immigrant Petition for Alien Worker; Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant); or be selected to participate in the Diversity Visa program. *See* 8 U.S.C. §§ 1153, 1154 (granting immigrant status); 8 C.F.R. § 204 (immigrant petition process); 22 C.F.R. § 42.33 (diversity visa process). If USCIS approves the underlying immigrant visa petition (or the noncitizen is selected to participate in the Diversity Visa program), the noncitizen must either: apply for adjustment of status, if present in the United States and eligible to adjust, 8 U.S.C. § 1255(a); or apply for an immigrant visa with the U.S. Department of State ("DOS"), 8 U.S.C. § 1202(a); 22 C.F.R. § 42.61(a). In either case, the noncitizen must, among other requirements, demonstrate that he is not inadmissible under any ground set forth in 8 U.S.C. § 1182(a). *See*,

---

[1] Because Saavedra Estrada has stated an APA unreasonable-delay claim, the Court will proceed under the unreasonable-delay framework instead of the Mandamus Act framework. *See, e.g., In re Roberts*, 178 F.3d 181, 183 (3d Cir. 1999) ("A Writ of Mandamus will not issue where adequate, alternative means remain available to obtain the relief sought by the Petitioner.").

*e.g.*, 8 U.S.C. § 1255(a).

Under 8 U.S.C. § 1182(a)(9)(B)(i)(I), a noncitizen who was unlawfully present in the United States for more than 180 days, but less than one year, during a single stay, and who then departs voluntarily from the United States before the commencement of removal proceedings, is inadmissible if he again seeks admission within three years of the date of departure. Under 8 U.S.C. § 1182(a)(9)(B)(i)(II), a noncitizen who was unlawfully present for one year or more during a single stay and then departs before, during, or after removal proceedings, is inadmissible if he again seeks admission within 10 years of the date of departure or removal.

Pursuant to 8 U.S.C. §1182(a)(9)(B)(v), the Attorney General, through the Secretary of Homeland Security, has authority to waive the unlawful-presence ground of inadmissibility if the noncitizen is seeking admission as an immigrant and if the noncitizen demonstrates that the denial of his admission to the United States would cause "extreme hardship" to the noncitizen's U.S. citizen or LPR spouse or parent. Section 1182(a)(9)(B)(v), provides:

> The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.

The noncitizen has the burden to establish, by a preponderance of the evidence, eligibility for a provisional unlawful-presence waiver. *See* 8 C.F.R. § 212.7(e)(7). Moreover, because the grant of a waiver is discretionary, the noncitizen must also establish that he merits a favorable exercise of the Secretary's discretion. *See id*. (provisional waiver applicant must merit "a favorable exercise of discretion").

Noncitizens who are ineligible to adjust their status in the United States must travel

abroad and obtain an immigrant visa.  *See* 8 U.S.C. § 1202(a), 22 C.F.R. § 42.61(a); *see also* 9 FAM 504.1-3.  As noted, such noncitizens who accrued more than 180 days of unlawful presence during a single stay in the United States and departed or were removed, who then apply with DOS for an immigrant visa within three or 10 years depending on their period of unlawful presence, are inadmissible under 8 U.S.C. § 1182(a)(9)(B) and must obtain a waiver of inadmissibility before their immigrant visa applications can be approved.  *See* 8 U.S.C. § 1182(a)(9)(B)(i) and (v).  Typically, noncitizens cannot apply for a waiver of inadmissibility until after they have appeared for their immigrant visa interviews abroad, 22 C.F.R. § 42.62(a)-(b), and a DOS consular officer has determined that they are inadmissible to the United States.  *See* 22 C.F.R. § 40.92(c); *see also* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule 78 Fed. Reg. 536, 536 (Jan 3, 2013) ("[c]urrently, these immediate relatives cannot apply for the waiver until after their immigrant visa interviews abroad.").

In 2013, the U.S. Department of Homeland Security ("DHS") promulgated regulations at 8 C.F.R. § 212.7(e), which allowed certain immediate relatives of U.S. citizens who were physically present in the United States to request provisional unlawful-presence waivers prior to departing from the United States for consular processing of their immigrant visas.  *See* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule 78 Fed. Reg. 536 (Jan. 3, 2013).  USCIS's approval of an applicant's provisional unlawful-presence waiver prior to departure allows the DOS consular officer to issue the immigrant visa without further delay, so long as there are no other grounds of inadmissibility and if the immediate relative is otherwise eligible.  *Id*. at 536.  In 2016, DHS expanded the provisional-unlawful-presence-waiver program to make it available to noncitizens with pending

immigrant visa cases with DOS based on being the principal or derivative beneficiary of an approved nonimmediate relative Form I-130, Form I-140, Form I-360, or Diversity Visa selection.  *See* Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016).

Waiver applicants must demonstrate that the refusal of admission to the United States will cause extreme hardship to their U.S. citizen or LPR spouse or parent and that they warrant a favorable exercise of discretion under 8 U.S.C. § 1182(a)(9)(B)(v).  Waiver applicants must also satisfy other eligibility criteria set forth under 8 C.F.R. § 212.7(e)(3) and (4).  Notably, filing a Form I-601A application with USCIS does not confer any benefits on the noncitizen.  *See* 8 C.F.R. § 212.7(e)(2)(ii); *see also* 78 Fed. Reg. 536 ("[t]he filing or approval of a provisional unlawful presence waiver application will not: Confer any legal status, protect against the accrual of additional periods of unlawful presence, authorize an alien to enter the United States without securing a visa or other appropriate entry document, convey any interim benefits . . . ."). If the provisional unlawful-presence waiver is approved, it becomes effective only after the noncitizen departs the United States, appears for an immigrant visa interview at a U.S. embassy or consulate, and if DOS determines that the noncitizen is otherwise eligible for an immigrant visa. *See* 8 C.F.R. § 212.7(e)(12).

### B.  USCIS's Processing of Unlawful Presence Waiver Applications

USCIS determines if the applicant meets the eligibility requirements for the provisional unlawful presence waiver at 8 C.F.R. § 212.7(e)(3) and is not subject to one of the ineligibility grounds at 8 C.F.R. § 212.7(e)(4), such as being in removal proceedings or not having a case pending with the Department of State.  Biometrics are required for the waiver.  8 C.F.R. § 212.7(e)(6).  The burden is on the applicant "to establish, by a preponderance of the evidence,

eligibility for a provisional unlawful presence waiver." 8 C.F.R. § 212.7(e)(7). The waiver requires hardship, namely that "the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." 8 U.S.C. § 1182(a)(9)(B)(v).

If the waiver is approved, it is not effective until the recipient leaves the country, appears for an immigrant visa interview at a U.S. Embassy or consulate, and is found eligible for a visa in light of the approved provisional unlawful-presence waiver. 8 C.F.R. § 212.7(e)(12). The approval of the waiver is automatically revoked if the applicant is found ineligible for the visa on any other ground. 8 C.F.R. § 212.7(e)(14).

At present, the posted processing time for a Form I-601A at the Nebraska Service Center is 44 months. Check Case Processing Times, Form I-601A, available at https://egov.uscis.gov/processing-times/ (last visited Nov. 21, 2023). The webpage further states:

> We generally process cases in the order we receive them. This processing time is based on how long it took us to complete 80% of adjudicated cases over the past six months. Each case is unique, and some cases may take longer than others. Processing times should be used as a reference point, not an absolute measure of how long your case will take to be completed.

*Id.*

From 2013 to 2018, the median processing time for I-601A applications was roughly three to five months. Since 2018 it has risen to nearly 37 months.

## II.   FACTS ALLEGED IN THE COMPLAINT

Turning now to the facts of this case. Saavedra Estrada, who is a Guatemalan national, entered the United States in 1997 when he was 14 years old. Soon after, he moved to Pottstown, Pennsylvania, where he has since lived, now with his wife—his co-Plaintiff and an American citizen—Bobbi Jo Saavedra and children. He filed an I-130 Petition for Alien Relative, which

6

was approved on April 21, 2021.  He then sent his Immigrant Visa Application to the United States Department of State, which received it on September 28, 2021.  He also sent in his I-601A Application for a Provisional Unlawful Presence Waiver to USCIS, which was received on November 30, 2021.  A year later, in November 2022, the Department of State National Visa Center (NVC) informed Saavedra Estrada that he had one year to complete his application at the NVC and if he did not, the Department of State would terminate his application.  But because Saavedra Estrada has been in the United States longer than three years, he must wait for the result of his I-601A unlawful-presence waiver adjudication before he can complete his immigrant-visa application.  He has been waiting nearly two years.

In short, the problem presented by Plaintiffs in their Complaint is this:  Saavedra Estrada must apply for his visa at a U.S. consulate in his country of nationality.  8 U.S.C. § 1202(a); 22 C.F.R. § 42.61(a).  But the requirement to apply abroad will trap him.  Anyone who was unlawfully present in the United States for more than 180 days and less than a year will not be allowed back in for three years; anyone present for over a year will be barred from entry for ten.  8 U.S.C. § 1182(a)(9)(B)(i)(I-II).  There's the rub:  Saavedra Estrada must travel abroad to apply for a visa, but he may not return home even if he could get one.  Saavedra Estrada maintains that if USCIS had adjudicated his application in a timely manner he and his family could have planned with certainty for the decision's consequences.  But it has not, so his application may be terminated and he may be forced to bear the costs of restarting it or face continued uncertainty regarding his and his family's status and situation.

### III.   JURISDICTION AND LEGAL STANDARDS

The standards for determining Defendants' Motion to Dismiss—for lack of jurisdiction and, in the alternative, for failure to state a claim—are set forth below.

### A. Fed R. Civ. P. 12(b)(1)

"If a District Court does not have subject matter jurisdiction, it must dismiss." *Berg v. Obama*, 586 F.3d 234, 242 n.6 (3d Cir. 2009). 28 U.S.C. § 1331 gives district courts subject matter jurisdiction over questions of federal law, but Congress may "restrict the judicial power of the United States Courts" by statute. *Monarch Anthracite Mining Co. v. Coffin*, 102 F.2d 337, 339 (3d Cir. 1939). A facial attack on subject matter jurisdiction asserts that a claim "is insufficient to invoke the subject matter jurisdiction of the court," and a factual attack argues that "the facts of the case . . . do not support the asserted jurisdiction." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). To evaluate a factual attack a court may look beyond the pleadings. *Id.* "In sum, a facial [jurisdiction] attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Id.* (citation and quotations omitted).

### B. Fed. R. Civ. P. 12(b)(6)

A plaintiff's complaint needs to state facts that, if true, would support a plausible legal claim under existing statutory or case law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The plaintiff must plead specific "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And the plaintiff must do more than merely accuse the defendant of violating a law—he must include specific facts that support his accusation. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

8

## IV. DISCUSSION

The APA provides in broad terms for judicial review of certain activity of administrative agencies. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). And Section 706(1) (under which Saavedra Estrada proceeds) requires the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." But the APA does not grant jurisdiction if other "statutes preclude judicial review" or the disputed "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2).

Here the parties dispute whether Section 1182(a)(9)(B)(v) of the INA precludes judicial review (and thus divests the Court of jurisdiction under Section 701(a) of the APA). They focus on the last sentence of that section, which provides: "No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause."

Saavedra Estrada maintains that sentence only removes courts' authority to review the agency's decisions granting or denying waiver, and because the agency has not issued a decision in his case, the Court has jurisdiction to review his unreasonable-delay claim. Defendants contend that sentence also strips courts of jurisdiction to address agency action on the grounds that it has bene unreasonably delayed.[2] So the critical jurisdictional question in this case is: Have Defendants, by not adjudicating Saavedra Estrada's application, made a "decision" or taken an "action" "regarding waiver"? If so, pursuant to Section 1182 the Court has no jurisdiction. If not, then the Court may proceed to determine whether Saavedra Estrada has

---

[2] Defendants also note that the Supreme Court has said "*many* provisions of [the Illegal Immigration Reform and Immigration Responsibility Act of 1996] are aimed at protecting the Executive's discretion from the courts." This may be true, but it does not entail that Section 1182(a)(9)(B)(v) must be read in any particular way.

stated a claim.

### A. 8 U.S.C. § 1182(a)(9)(B)(v) Does Not Remove the Court's Jurisdiction Over Saavedra Estrada's Unreasonable-Delay Claim.

When the question of whether the language of a statute grants or strips jurisdiction is "reasonably susceptible to divergent interpretation," a "well-settled" and "strong" presumption favors judicial review of administrative action. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (citing *Kucana v. Holder*, 558 U.S. 233, 251 (2010); *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496, 498 (1991)) (quotations omitted). Only "'clear and convincing evidence' of congressional intent to preclude judicial review" can overcome the presumption. *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (citing *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 64 (1993)).[3] Courts can ascertain congressional intent with the traditional tools of statutory interpretation (*see id.* at 1070-72 (considering statutory text, context, and history, and legislative history, to determine Congressional understanding and intent)).

#### i. The APA's definition of "agency action" does not apply.

The APA provides that "[f]or the purpose of this subchapter," "agency action" may include "failure to act." 5 U.S.C. § 551(13) (emphasis added). Defendants, relying on this provision and citing *Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (*SUWA*), argue that: (1) "Decision or action by the Attorney General" in Section 1182 should be defined as the APA defines "agency action" (*i.e.*, to include "failure to act"); and, (2) USCIS has engaged in a "failure to act" as defined by the APA. The upshot is that if they are correct, their delay in adjudicating Saavedra Estrada's application is a failure to act, which means it is a

---

[3] The Supreme Court has "consistently applied the presumption of reviewability to immigration statutes." *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quotations removed).

"decision or action by the Attorney General," which means the Court has no jurisdiction to review it under Section 1182. Although Defendants declare that the APA's definition is dispositive they do not explain why, and a careful analysis of the applicable statutory provisions leads to a contrary conclusion.

In evaluating this argument it must be noted at the outset that although Section 551(13) of the APA contains the term "agency action," Section 1182 of the INA does not. That alone would counsel that Section 551(13)'s inclusion of "failure to act" as agency action is not necessarily transportable into Section 1182. Quite plainly, the APA's definitions "are only mandatory in the context of the APA itself." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013). Indeed, when Congress means to incorporate APA definitions into other statutes, it often does so expressly. For example, in *Hawaiian Telephone Company v. Public Utilities Commission of State of Hawaii*, the Ninth Circuit explained that when Congress meant to import an APA definition into the Communications Act, it did by explicit reference three times in 47 U.S.C. § 409(a)-(c). 827 F.2d 1264, 1271 (9th Cir. 1987). Here, Section 1182 does not explicitly incorporate the APA's definition of "agency action." As noted above, it does not even use the term, "agency action."

Neither is there anything in the language of Section 1182 that supports Defendants' argument that Congress contemplated that a failure to act is covered by its terms. Specifically, the section refers to "decision or action by the Attorney General[,]" but the meaning of neither term is spelled out in the INA's definitional section. 8 U.S.C. § 1101. And in fact, if Congress had wanted to include the APA's definition of "agency action" into the INA's term, it could have done so in The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), in

11

which it significantly amended the INA, including its definitional section but did not.  Hence, the term "decision or action" in Section 1182 does not include an agency's failure to act.

### ii.     *USCIS has not engaged in a "failure to act."*

Even if Section 1182 did import the APA's definition of "action," USCIS has not engaged in a failure to act.  Defendants do not say the agency has decided never to act.  They do not argue that it has *chosen not to* adjudicate Saavedra Estrada's application, or that a deadline has passed and thus it has failed to act.  (Indeed, they could not—as Defendants acknowledge, there is no deadline).  Their argument is that *for now* the agency has "failed" to adjudicate Saavedra Estrada's application, but in the future it may choose to "un-fail" by adjudicating his application.  Essentially they argue that a *stated intention to someday get to* Saavedra Estrada's application is a "decision" or an "action" because it is a "failure to act."  Defendants stretch those words too far.  Their interpretation would render the "unreasonable delay" language in Section 706 surplusage:  If an agency "failed" to act every moment between the time an application was submitted and the time it was adjudicated, then no delay would be unreasonable (in fact, no delay would even be a *delay* in the ordinary sense).  The APA provides for relief in the case of agency action "unlawfully withheld" *or* "unreasonably delayed," but Defendants' argument collapses those into one and creates surplusage.  *See also SUWA*, 542 U.S. 55, 62-63, (2004) ("'Failure to act' is . . . a failure to take an agency action— . . . for example, the failure to promulgate a rule or take some decision by a statutory deadline.  The important point is that a 'failure to act' is properly understood to be limited, as are the other items in § 551(13), to a discrete action.").

Defendants' citation to *Patel v. Garland*, 142 S. Ct. 1614 (2022), is inapposite.  In *Patel* the Supreme Court considered a similar, though not identical, jurisdiction-stripping INA provision that removes courts' jurisdiction to review "any judgment regarding the granting of

12

relief" under particular subsections of the INA.  8 U.S.C. § 1252(a)(2)(B)(i).  The Court read "any judgment regarding" expansively.  It emphasized that the word '*any*' expands the class of '*judgments*' countenanced by the statute and explained that '*regarding the granting of relief*' refers to any judgment "relating to" the granting of relief, not just the granting of relief itself.  Therefore, the Court concluded, the statute covered not just the agency's ultimate decision to grant or deny relief but also to any subsidiary factfinding judgments along the way.

      Here Defendants argue that Section 1182 is analogously capacious.  They say that, just as the Supreme Court said that "any judgment regarding" in Section 1252 includes factfinding judgments and not just ultimate adjudicatory judgments, so "decision or action . . . regarding" in Section 1182 encompasses *in*decision and *in*action, in part on the grounds that the Court said "regarding" has a "broadening" effect.[4]  But the central issue in *Patel* is not analogous to the central issue here.  In *Patel*, the parties did not disagree that, regardless of the extent to which a 'judgment' required discretion, it was certainly an affirmatively taken act.  The notion of a 'judgment regarding' something entails that a judgment was made.  No party in *Patel* argued, and the Court did not say, that 'regarding' so broadened the notion of a 'judgment' as to include the lack of a judgment.

      Defendants' expansive reading of Section 1182 would strip the Court's jurisdiction to review any aspect of the waiver process, including all unreasonable-delay claims, not just Saavedra Estrada's.  But, as explained above, where a jurisdiction-stripping provision does not explicitly specify its limits, and where "a contrary interpretation would result in a barrier to meaningful judicial review," a "well-settled and strong presumption favor[s] judicial review."

---

[4] Defendants also say the Supreme Court "rejected the interpretation that Section 12(a)(2)(B)(i) was limited to only 'discretionary judgments or the last-in-time judgment.'"  Not exactly.  In the quoted passage the Court explained the expansive nature of the word "any"—which does not appear in Section 1182(a)(9)(B)(v).

*Guerrero-Lasprilla*, 140 S. Ct. at 1064 (citing *Kucana* 558 U.S. at 251 (2010); *McNary*, 498 U.S. at 479, 496, 498) (quotations omitted).  "That presumption, which can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review, has consistently been applied to immigration statutes." *Id.*  Because Section 1182(a)(9)(B)(v) does not by its express language strip the Court's jurisdiction to review unreasonable-delay claims, and because in the absence of an express limitation judicial review is presumptively available, Section 1182(a)(9)(B)(v) does not remove the Court's jurisdiction to review Saavedra Estrada's unreasonable-delay claim.

### B. Saavedra Estrada States a Claim to Relief.

To state an APA unreasonable-delay claim, a plaintiff must show that the agency has a nondiscretionary duty to act and that it has unreasonably delayed in acting on that duty.  *SUWA*, 542 U.S. at 63-65.  Here, the agency may grant or deny applications, but it clearly has a nondiscretionary duty to decide.  5 U.S.C. § 555(b), 706(1).  To determine whether an agency has unreasonably delayed a decision, the four factors from *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120 (3d Cir. 1998) (OCAWU), govern: (1) "the length of time that has elapsed since the agency came under a duty to act"; (2) "the reasonableness of the delay . . . in the context of the statute authorizing the agency's action"; (3) "the consequences of the agency's delay"; and, (4) "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."[5]

---

[5] Saavedra Estrada argues that inquiry into the four *OCAWU* factors is inappropriate at this stage because in general courts do not make fact determinations to resolve a 12(b)(6) motion.  But, the Court evaluates the *OCAWU* factors here through the lens of the standards of a motion to dismiss only to determine whether Saavedra Estrada has stated facts that, if true, would be sufficient to state a claim for unreasonable delay.

### i. *Length of time elapsed*

Saavedra Estrada has waited for nearly two years. As Defendants note, unless a statute prescribes a deadline, there is no precise time limit after which any delay automatically becomes unreasonable. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir 2003) (Unreasonable delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful"). But the lack of a precise cutoff makes it easier to clear the 12(b)(6) hurdle, not harder: The fact that the Complaint alleges that the delay in this case was 20 (now as of writing 23) months, instead of 10 or 30 or 40 months, is no inherent reason for dismissal at this stage.

Defendants also say that Saavedra Estrada's wait time "is well within the current processing time for a Form I-601A at the Nebraska Service Center." But the average delay has no bearing on Saavedra Estrada's specific case. Perhaps *all* such delays are unreasonable. But the one before the Court is Saavedra Estrada's. *See Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022) ("We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race.").

### ii. *Reasonableness of delay in the context of the statute*

Saavedra Estrada cites 8 U.S.C. § 1571(b), a provision of the INA enacted in 2000 to decrease the wait time on certain immigration-benefits applications: "It is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application." Defendants correctly note that the sense of Congress is not a deadline. Still, courts do consider "sense of Congress" language. "Congress' expectations do not necessarily carry the force of law, though the 180-day timetable may provide the Court with general guidance." *Daraji v. Monica*, 2008 WL 183643, at *5 (E.D. Pa. Jan. 18,

15

2008).  To be sure, the 180-day expectation places light pressure on the scale because it is not mandatory on the agency.  But it does add some weight as to reasonableness in the context of the statute.[6]

In any case, though, several courts have found two-year USCIS adjudicatory delays presumptively unreasonable under the APA.  *Ak v. Garland*, 2022 WL 3042853, at *5 (E.D. Pa. Aug. 2, 2022) (citing *Daraji*, 2008 WL 183643, at *5-6 (holding two-year delay unreasonable and granting summary judgment for plaintiff)); *Karimushan v. Chertoff*, 2008 WL 2405729, at *6 (E.D. Pa. June 11, 2008) (same); *Wang v. Gonzalez*, 2007 WL 4463009 (N.D. Cal. Dec. 17, 2007) (holding two-year delay unreasonable); *Ying He v. Gonzales*, 2007 WL 4259453 (N.D. Cal. Dec. 4, 2007) (holding two-and-a-half-year delay unreasonable)).  Similarly situated plaintiffs have won summary judgment on their unreasonable-delay claims.

### iii.   *Consequences of delay*

Saavedra Estrada alleges he has had to pay significant application fees and will have to pay more if USCIS' delay causes NVC to terminate his application; that the delay creates uncertainty in his life and that his application has exposed him to deportation.  He notes that his wife is susceptible to serious medical issues and that his family depends on him to be the

---

[6] Defendants argue that Section 1571(b) does not bear on this case because it was enacted in response to a "then-existing backlog" of applications and petitions.  But that is not exactly what the text says.  It says the purpose is to "eliminate the current backlog in the processing of immigration benefit applications within 1 year after October 17, 2000, *and to maintain the elimination of the backlog in future years*."  8 U.S.C. § 1571(b) (emphasis added).

Defendants also argue that Section 1571(b) is inapplicable because it defines "immigration benefit applications" as "any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act."  Defendants are correct that the waiver would not itself confer any legal status or authorization on Saavedra Estrada.  The Court is less certain that an inadmissibility-waiver application is not an application to "change" a "status" (of admissibility), but in any case, for the reasons stated above the 180-day expectation is not determinative.

Finally, Defendants cite *Liberty Fund, Inc. v. Chao*, 394 F. Supp.2d 105, 120 (D.D.C. 2005) ("[T]he good faith of the agency in addressing the delay weighs against" granting relief.).  *Liberty Fund, Inc.* does not bind the Court.  To the extent that the agency's good faith enters the *OCAWU* analysis, it is in the fourth factor, discussed below.

breadwinner. The uncertainty of his pendent application, he fears, raises the stakes. And he says that the prospect of moving his wife and children to Guatemala (in the event he is deported) raises severe logistical, physical, and psychological concerns. Defendants respond simply that Saavedra Estrada could continue to "reside with his wife" in the U.S. for now. These "economic and personal detriments" and the "stress and psychological pressure" that result from the wait are sufficient to state a claim. *See Daraji*, 2008 WL 183643, at *6 (E.D. Pa. Jan. 18, 2008).

### iv. *"[A]dministrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources"*

Defendants state that 80% of applications are processed within 44.5 months, which perhaps implies "administrative inconvenience" or "practical difficulty in carrying out [the agency's] legislative mandate." Defendants also note that USCIS has "many other priorities and gets to set its own agenda for how it spends its limited resources." Saavedra Estrada replies that USCIS' funding structure undermines Defendants' arguments regarding limited resources: 96% of USCIS' spending authority arises from "fees charged to applicants and petitioners for immigration and naturalization benefit requests," and if USCIS finds itself resource-constrained, it can simply raise its fees. Still, Defendants argue, because USCIS has many priorities and may set its own agenda, it would be "entirely unfair" to allow Saavedra Estrada's suit to proceed.

It would not. In *Daraji*, the court granted summary judgment to plaintiffs who waited about two years for action on their naturalization applications to USCIS. The Court determined the delay was unreasonable under the *OCAWU* test and remanded the applications for adjudication within 90 days. It reasoned in part as follows:

> The Court has considered the considerable administrative demands placed on the [agency] and is sympathetic, but the Court is not in a position to relieve defendants of their obligation to comply with their mandatory duties, nor condone defendants' non-compliance. It

17

> is not the role of the judicial branch to weigh individual plaintiffs' clear rights to administrative action against the agency's burdens in complying. . . . If the primary cause of the delay to these plaintiffs' applications is a systemic problem, as defendants suggest, it requires a systemic solution that the Court is not in a position to fund nor implement. Defendants' arguments regarding administrative burdens would be more properly addressed to the political branches, which are in a position to either allocate additional resources to the [agency], or modify the governing statutes and regulations.

2008 WL 183643, at *7 (E.D. Pa. Jan. 18, 2008) (Restrepo, M.J.) (citations and quotations omitted). The Court, of course, does not decide the ultimate issue in favor of or against Defendants at this stage. But Defendants' mere assertion that USCIS has many priorities and limited resources is insufficient to justify granting their Motion to Dismiss.[7]

## V. CONCLUSION

For these reasons, Defendants' Motions to Dismiss will be denied. An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**

---

[7] *See also Barrios Garcia*, 25 F.4th at 454-55 (6th Cir. 2022) ("We sympathize with the burdens that agencies shoulder. But we cannot supplant the law with the Government's policy argument that agencies should be the sole arbiters of what constitutes an 'unreasonable delay' because agencies are best positioned to manage their resources . . . . Taken to its logical conclusion, the Government's argument would eliminate federal judicial review of any agency action and wipe the APA off the books.").